SECURITIES AND EXCHANGE COM-MISSION, Petitioner,

v.

Honorable George TEMPLAR, District Judge of the United States, District Court for the District of Kansas, Respondent.

No. 10114.

United States Court of Appeals Tenth Circuit.

Jan. 3, 1969.

David Ferber, Sol., Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., General Counsel, Paul Gonson, Special Counsel, Thomas W. Armstrong, Attorney, Securities and Exchange Commission, Washington, D. C., Thomas B. Hart, Administrator, J. Kirk Windle, Special Counsel, Joseph L. Grant, Attorney, Securities and Exchange Commission, Chicago, Ill., on the brief), for petitioner.

Wayne Stratton, Topeka, Kan. (Alvin D. Shapiro, Kansas City, Mo., on the brief), for respondent.

Before HILL, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The Securities and Exchange Commission has petitioned this court to mandamus the Honorable George Templar, United States District Judge for the District of Kansas, to consider a motion, made by the Commission, in a Chapter X proceeding under the Bankruptcy Act. The motion was made by the Commission in a reorganization proceeding pursuant to 11 U.S.C. § 501 et seq.[1] The referee concluded that the Commission lacked standing to seek the relief requested. The court treated the referee's findings and conclusions as a report authorized by Fed.R.Civ.P. 53(e) (1) and the proposed order as the recommendation of the master.[2] The motion of the Commission was considered as a written objection to the report of the referee acting as a special master. Fed.R.Civ.P. 53(e) (2).

The reorganization involved the General United Corporation, Inc. It is undisputed that the corporation, while operating under the name of General Leasing Corporation, had purchased the assets of the United Manufacturing and Engineering Corporation by issuing General Leasing stock. Proxies, which were sent to General Leasing stockholders to authorize the purchase of United Manufacturing, stated that United Manufacturing had a net worth of $669,269.97. Actually the corporation was insolvent. The proxies also contained an offer to buy any stock General Leasing stockholders wanted to sell. One hundred fifty one stockholders retained General Leasing stock. The trustee's first re-

---

1. In Title 11 of the United States Code the numbers of the sections of the Bankruptcy Act comprising Chapter X are higher by 400 than the Act itself. Hereafter the Bankruptcy Act section numbers will be used.

2. The orders of reference were to the referee, *qua* referee, and also as special master as permitted under § 117 of the Bankruptcy Act (11 U.S.C. § 517).

port speculated that the stockholders, who had retained their interests in General Leasing, would not have done so if they had known the condition of United Manufacturing. The trustee concluded that these stockholders had a right to recover from General United Corporation, and initially proposed that they be classified as general creditors in the reorganization. Subsequently the trustee amended the plan and omitted the provision classifying the stockholders as general creditors.

The Commission's motion sought to have the stockholders classified as general creditors. The referee sitting as special master held a hearing and recommended the motion be denied.

The real issue as defined by the district court is whether the Commission has standing to represent the one hundred fifty one stockholders. The court had set July 10, 1964 as the deadline for filing claims. The Commission did not enter its appearance in the matter until July 14, 1964. No interested stockholders sought to assert their rights before or after the Commission entered its appearance.

The Commission contends that section 208 [3] affords it the right to participate as a party in all aspects of the reorganization proceeding to the same extent as any other party thereto.[4]

■ We agree that Section 208 gives the Commission participation rights similar to those of other parties in a Chapter X proceeding.[5] We do not agree, however, that the Bankruptcy Act gives the Commission superior rights to other parties; the status the Commission seeks, by indirection, in this action.

■ In the instant case, none of the stockholders filed timely claims. This court would not mandamus the district court to hear out of time claims of these stockholders.[6] We cannot, therefore, grant the Commission a remedy we would not grant to the same, apparently uninterested group, the Commission seeks to protect. If we were to accept the Commission's argument, we would be obliged to direct the district court to consider a motion by the Commissioner regardless of its procedural imperfections.

■ It is incumbent upon this court, the district court, and all parties to all litigation, including the Commission, to abide procedural rules to the maximum possible extent. The orderly administration of the court system would, otherwise, be chaotic.[7]

Writ denied.

3. 11 U.S.C. § 608.

4. The scope of the Commission's participation as a "party in interest" has been restricted by the legislative history of the Bankruptcy Act which indicates the function of the Commission in Chapter X proceedings is that of an impartial advisor, "in the role of amicus curiae." Senate Hearings on H.R. 8046, 75th Cong. 2nd Sess. 12 (1937–38). See also Teton, Reorganization Revised, 48 Yale L.J. 573, 583–86 (1938); Note, Bankruptcy: Corporate Reorganization: Survey of Chapter X In Operation, 18 N.Y.U.Law Qtly. Rev. 399, 450–451 (1941).

5. The statute clearly provides one exception to this statement; "but the Commission may not appeal or file any petition for appeal." 11 U.S.C. § 608.

6. Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (10th Cir. 1967); In re Diana Shoe Corp. (338 Berry Street, Inc. v. Crane), 80 F.2d 92 (2d Cir. 1935).

7. Smith v. United States, 369 F.2d 49 (8th Cir. 1966), cert. denied 386 U.S. 1010, 87 S.Ct. 1355, 18 L.Ed.2d 439 (1967).